Gary BOLLENBACHER, Plaintiff,

v.

HELENA CHEMICAL COMPANY, as named Long Term Disability Plan; Helena Chemical Company, as named Plan Administrator; and Unum Life Insurance Company of America, as de facto Plan Administrator of the Plan, Defendants.

No. 1:95–CV–350.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 29, 1996.

John C. Theisen, Mark S. Kittaka, Gallucci Hopkins and Theisen PC, Fort Wayne, IN, for Gary Bollenbacher.

Carolyn W. Spengler, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Philip M. Berkowitz, Kenneth W. DiGia, Epstein, Becker and Green, New York City, for Helena Chemical Company.

Douglas D. Powers, Lisa M. Dillman, Baker and Daniels, Fort Wayne, IN, for Unum Life Insurance Company of America.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on an array of motions and cross-motions. Defendant Helena Chemical Company, as named Plan Administrator ("Helena"), filed a Motion to Dismiss on December 13, 1995.[1] Plaintiff Bollenbacher ("Bollenbacher") filed his response to said motion on December 29, 1995, and Helena filed its reply on January 11, 1996. On January 5, 1996, Bollenbacher filed a Motion for Partial Summary Judgment and on that same date Defendants Helena Chemical Company, Helena Chemical Company, as named Long Term Disability Plan ("Helena, the Plan"), and UNUM Life Insurance Company of America ("UNUM") (also collectively referred to as "Defendants") filed their Joint Motion for Partial Summary Judgment. On January 11, 1996, Defendants filed a joint response to Bollenbacher's Motion for Partial Summary Judgment, and on January 12, 1996, Bollenbacher filed his response to Defendants' Joint Motion for Partial Summary Judgment. Also on January 11, 1996, Defendant Helena Chemical Company, as named Plan Administrator, filed a Reply Memorandum in Support of its Motion to Dismiss.

---

1. For reasons set forth below, this Motion to Dismiss will be addressed by the court as a Motion for Summary Judgment.

Bollenbacher filed a response brief to Helena's reply memorandum on January 29, 1996. Also on January 29, 1996, Bollenbacher filed a Motion for Partial Summary Judgment on an issue separate and apart from the issues raised in his earlier Motion for Partial Summary Judgment.[2] Finally, on February 15, 1996, Defendant Helena filed its Reply Memorandum of Law in Support of its Motion to Dismiss and/or Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment. For the reasons set forth below, Defendant Helena's Motion for Summary Judgment (previously designated as Motion to Dismiss) is TAKEN UNDER ADVISEMENT pending further briefing by the parties; Defendants' Motion for Partial Summary Judgment on the issues of the standard of review and the scope of review is GRANTED; Bollenbacher's Motion for Summary Judgment on the issues of the standard of review and the scope of review is DENIED; and Bollenbacher's Motion for Partial Summary Judgment on the issue of the unenforceability of the Release and Settlement Agreement is DENIED.

## STATEMENT OF FACTS

Gary Bollenbacher was employed by Helena Chemical Company as a chemical applicator. He worked for Helena, and its predecessor, Riverside Warehouse Company, for nearly seven years. Complaint, ¶ 10. In early May of 1991, Bollenbacher sustained an injury while driving a chemical applicator truck. The incident allegedly resulted in spinal injuries which later led to degenerative disc disease. Complaint, ¶ 11. In October of 1992, Bollenbacher could no longer perform his job as a chemical applicator, and so Helena transferred him to a less physically demanding clerical position and continued to pay him his applicator's salary. Com-

plaint, ¶ 12. Bollenbacher's health allegedly continued to deteriorate over the next eleven months, forcing him to miss many days of work. Complaint, ¶ 14. Bollenbacher claims that Helena offered him a position in one of the company's other facilities, but that he refused because it would entail a longer drive to and from work each day, only adding to his daily pain and suffering. Complaint, ¶ 15. On September 29, 1993, approximately three to four weeks after they offered him a transfer, Helena representatives informed Bollenbacher that he was being laid off from his clerical position. Complaint, ¶ 16.

The parties concede that at all times relevant to this controversy, Helena offered a long term disability plan to its employees, said plan having been purchased by the company from UNUM Life Insurance Company of America ("UNUM"). Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment, Exhs. A and B. The policy, number 311769, had an effective date of December 1, 1983. Bollenbacher contends that he was wrongfully denied long term disability benefits under the plan, and he brought this action pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA").

## SUMMARY JUDGMENT STANDARD

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of

---

2. On February 1, 1996, Bollenbacher filed a Motion for Leave to File Amended Complaint. On February 12, 1996, after having received no response to this motion to amend, Magistrate Judge Cosbey granted Plaintiff's motion. (This case is on partial referral to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A) and N.D.Ind. L.R. 72.1(c).) The Defendants then protested, arguing that they intended to file a response. Thus, on February 14, 1996, Magistrate Judge Cosbey entered an Order granting Defendants

leave to file their response to the motion to amend. The Magistrate directed that "[t]he Court will consider the response as a motion to reconsider the granting of the motion to amend to which the Plaintiff may file a reply." Consequently, the motion to amend is not yet fully briefed and is not presently before the court. Pursuant to Magistrate Cosbey's Order of February 14, 1996, the issue regarding Plaintiff's motion to amend will be addressed separately by the Magistrate once it is fully briefed.

summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High Sch. Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

## DISCUSSION

### 1. Cross-motions for Partial Summary Judgment—The Proper Standard of Review

The parties' cross-motions for partial summary judgment address the issue of the proper standard of review to be applied by the court when determining the reasonableness of UNUM's decision to deny Bollenbacher long term disability benefits. The parties properly point out that the seminal case on this issue is *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct.

948, 103 L.Ed.2d 80 (1989). In *Firestone*, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956. The plan at issue here contains no express grant of such discretion, and Defendants concede that in the plan "... no such discretionary language exists." Memorandum in Support of Defendants' Joint Motion for Partial Summary Judgment, p. 4. On its face, this would seem to end all debate on the issue. Since the defendants admit that the plan does not contain language which confers upon the plan administrator the discretion to determine eligibility for benefits or to interpret the terms of the plan, a *de novo* standard of review of the decision to deny Bollenbacher benefits would appear to be appropriate. However, the inquiry does not end here, since a grant of discretion can be implied from plan language, even absent any express language. *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375 (7th Cir.1994).

Obviously, where the language in a plan expressly confers upon the administrator such discretionary power, the *Firestone* inquiry is easy. However, even where there is no express grant of discretion, such grant can be implied by the terms of the plan. *Id.* at 379. The Seventh Circuit, when faced with the challenge of determining whether plan language confers on an administrator a grant of discretion, has held that "'magic words (such as 'the committee has discretion to ...') are unnecessary.'" *Petrilli v. Drechsel*, 910 F.2d 1441, 1447 (7th Cir.1990) (quoting *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir. 1990)). The phrase "the committee has discretion to ..." was a reference to the case of *Bali v. Blue Cross and Blue Shield Association*, 873 F.2d 1043 (7th Cir.1989). In *Bali*, the plan in question contained language that stated that the existence of a disability would be "determined on the basis of medical evidence satisfactory to the committee." 873 F.2d at 1047. The court held that such

language did in fact constitute a grant of discretion to the administrator. "In addition, this Court has held that a plan that empowers the administrators 'to construe and interpret the plan,' brings the plan within *Bruch's* exception to the *de novo* review." *Petrilli*, 910 F.2d at 1447 (citing *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)).

In *Donato*, the plan at issue provided that the administrator "will pay long-term disability benefits 'upon receipt of proof,' and that '[a]ll proof must be satisfactory to us.'" 19 F.3d at 379. The Seventh Circuit held that such language was sufficient to confer on the plan administrator the discretion to determine eligibility benefits since it was the administrator alone who had the power to determine that medical evidence was sufficient to prove an applicant was disabled. In the recent case of *Patterson v. Caterpillar, Inc.*, 70 F.3d 503 (7th Cir.1995), the court seemed to apply an even more liberal standard when it held that plan language which provided that "'benefits will be payable only upon receipt by the Insurance Carrier or Company of such notice and such due proof, as shall be from time to time required, of such disability'" was similar to the provisions in *Donato* and *Bali* and was sufficient to confer discretion upon the administrator. Therefore, the arbitrary and capricious standard applied.

In the present case, the language in the Helena Plan, as stated previously, contains no express grant of discretion to the administrator to determine eligibility for benefits or to construe the terms of the plan. The relevant language states that benefits will be paid "[w]hen the Company receives proof that the individual is disabled due to sickness or injury and requires the regular attendance of a physician." Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment, Exh. A, p. L–BEN–1. The plan goes on to state that "proof must be given upon request and at the insured's expense." *Id.* The Plaintiff argues that a plan which merely requires "proof" does not confer upon the administrator the degree of discretion necessary for the plan to fall within the *Firestone* exception. Plaintiff argues that something more is necessary; that *Donato* and *Bali* stand for the proposition that

a plan must contain some kind of qualifying language pertaining to the *degree* of proof required, or the extent to which a plan administrator is empowered to weigh the proof submitted. However, there is no holding, or even *dicta*, in the relevant cases that expressly supports this conclusion and the court does not find the argument convincing. As a practical matter, it is difficult to detect a qualitative difference between plan language that requires a claimant to submit "proof" and one that requires the submission of "such due proof" or even "satisfactory proof." Indeed, adjectives like "satisfactory" seem rather redundant when teamed with the concept of "proof."

 "Proof" has been defined as "[T]he effect of evidence; the establishment of a fact by evidence.... [A]ny fact or circumstance *which leads the mind* to the affirmative or negative of any proposition." Black's Law Dictionary 1215 (6th edition 1990) (citations omitted) (italics added). [Proof] "is logically defined as the sufficient reason for assenting to a proposition as true, and in its larger sense it is defined as meaning *satisfying fair men* by fair means of what was done." 73 C.J.S. 154 (citations omitted) (italics added). A plan administrator that requests "proof" of a claimant's disability must out of necessity examine the evidence submitted by the claimant to determine whether or not it amounts to "proof" of the alleged disability. Obviously, if the proof is sufficient, the administrator will (or at least should) determine that the claimant is eligible for benefits; if the proof is not sufficient, eligibility will be denied. In short, plan language which requires a claimant to submit "proof" of a claim does, by its very nature, grant discretion to the plan administrator to determine eligibility for benefits. The result might very well be different if the plan language required a claimant to submit, for example, a "doctor's verified diagnosis of disability" as a prerequisite to the payment of benefits, or where a plan required a claimant to submit "documentation of the nature and extent of your disability." Such language does not imply that the administrator will be basing an eligibility determination on the requested documents. Rather, it would indicate merely that the administrator requires certain specific documentation in order to process the claim. A plan that requires "proof," as does the plan in this case, implicitly grants to the administrator the discretion to determine eligibility under the plan based on the administrator's assessment of that proof.

In fact, letters sent to Bollenbacher from UNUM representatives support the conclusion that the administrator reviewed the "proof" submitted by Bollenbacher and made an eligibility determination. In a letter dated April 1, 1994, UNUM Disability Benefit Specialist Barbara Fuller wrote that "[w]e have *completed our review* of your application for [disability benefits]." Complaint, Exh. B (italics added). In a letter dated January 3, 1995, Lisa Hopkins, a UNUM Senior Benefits Analyst, wrote that "[w]e have *completed our review* regarding your appeal for Long Term Disability Benefits." Complaint, Exh. C (italics added). Hopkins then goes on to state that UNUM representatives consulted with both a physician and a vocational expert regarding Bollenbacher's file. Finally, in a letter dated May 24, 1995, Meredith Fogg, a Senior Benefits Analyst, wrote to Bollenbacher and explained that "[t]he medical documentation has been reviewed.... We have received the correspondence which you received from the Social Security Administration. We do, however, *make our disability determination* independently of those made by other agencies." Complaint, Exh. E (italics added). This evidence indicates that the Defendants went beyond the mere processing of Bollenbacher's claim. They reviewed the documentation Bollenbacher submitted, discussed his claim with a medical expert and a vocational expert, and arrived at the decision to deny benefits. In other words, they examined Bollenbacher's "proof" and, based on their judgment that said proof was insufficient, they determined that he was not eligible for long term disability benefits.

For the reasons discussed, the court finds that the language in the plan in question in this case grants to the plan administrator the discretion to make determinations of eligibility for benefits. Consequently, the court will reverse the decision of the administrator only

if the court finds that UNUM's decision to deny Bollenbacher long term disability benefits was arbitrary and capricious. Accordingly, Defendants' Joint Motion for Partial Summary Judgment on the issue of the proper standard of review is GRANTED; Bollenbacher's Motion for Partial Summary Judgment on the issue of the proper standard of review is DENIED.

 The issue of the proper *scope* of review of a plan administrator's decision goes hand-in-hand with the issue of the proper *standard* of review. If the applicable standard of review is arbitrary and capricious, then the district court is limited to reviewing only the record that was available to the plan administrator at the time the challenged decision was made. *Hasty v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 851 F.Supp 1250, 1258 (N.D.Ind.1994) (citing *Wolfe v. J.C. Penney Co.*, 710 F.2d 388 (7th Cir.1983)). Accordingly, Bollenbacher's Motion for Partial Summary Judgment on the issue of the scope of review is DENIED and Defendants' Joint Motion for Summary Judgment on the issue of the scope of review is GRANTED.

### Motion to Dismiss Filed by Defendant Helena Chemical Company, as Named Plan Administrator

 Defendant Helena Chemical Company, as Named Plan Administrator, filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that it is an improper party since it is not a fiduciary as that term is used in ERISA and interpreted by case law.[3] However, in Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss, filed approximately 30 days after its Motion to Dismiss, Helena for the first time raises the argument that it is not liable to Bollenbacher in any event since Bollenbacher signed a "Release and Settlement Agreement" with Helena on October 26, 1993. Helena attached a copy of said release to its reply memo. Rule 12(b) states in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The introduction by Helena of the Release and Settlement Agreement, therefore, transforms its Motion to Dismiss into one for summary judgment, rendering the record presently before the court incomplete under Rule 56 and the motion not yet ripe for determination by the court. Rule 12(b) mandates that the parties shall be given an opportunity to file any appropriate summary judgment evidence once the court determines that a 12(b)(6) motion to dismiss is converted to and should be addressed as a motion for summary judgment pursuant to Rule 56. In the present case, the parties are entitled to submit summary judgment evidence on the issue of whether Helena was a fiduciary under ERISA, or, more specifically, evidence of the degree to which Helena participated or had authority to participate in the administration of the ERISA plan. Indeed, Bollenbacher requested time to conduct additional discovery regarding this matter should the court decide to treat Helena's Motion to Dismiss as a Motion for Summary Judgment. Plaintiff's Brief in Response to Defendant Helena Chemical Company's Motion to Dismiss, p. 8 n. 3.

Helena asserts that "the law is clear that fiduciary status is determined by the functions performed, not the office held." Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss, p. 3 (citations omitted). The ERISA statute itself confers fiduciary status on a person or entity " . . . to the extent that (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting

---

**3.** This motion to dismiss is brought only on behalf of Helena Chemical Company as Named Plan Administrator. The other two defendants, Helena Chemical Company Long–Term Disability Plan and UNUM Life Insurance Company, concede that they are proper party defendants to this action. Defendant's Reply Memorandum, p. 2 n. 1.

management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Furthermore, as Defendants point out, the Seventh Circuit has stated that "ERISA makes the existence of discretion a *sine qua non* of fiduciary duty." *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 129 (7th Cir.1992).

For his part, Bollenbacher argues that Helena is a fiduciary by virtue of being named Plan Administrator of the plan in question. He cites a passage from the Code of Federal Regulations which he claims supports his position. That regulation states in relevant part that "... a plan administrator or a trustee of a plan must, by the very nature of the position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 3(21)(A) of the Act. Persons who hold such positions will therefore be fiduciaries." 29 C.F.R. § 2509.75–8. Helena counters that this passage pertains only to those plan administrators who actually perform duties in the administration of the plan. Helena states that even Bollenbacher admits in his complaint that Helena is the "named Plan Administrator," while UNUM is the *de facto* Plan Administrator. Therefore, Helena maintains that the determination of fiduciary status in dependent upon the "functions performed, not the office held."

Bollenbacher also argues that regardless of whether Helena is a fiduciary, it is a proper party because Bollenbacher is seeking both legal and equitable relief, and that equitable relief under ERISA may be obtained even against non-fiduciaries. Plaintiff's Brief in Response to Defendant Helena Chemical Company's Motion to Dismiss, pp. 2–4. Helena counters that Bollenbacher's request for equitable relief is merely a disguised restatement of his request for the payment of disability benefits and that such money damages are the classic form of legal, not equitable, relief.

The respective positions of Bollenbacher and Helena are relatively clear from the briefs already filed. However, as the Motion to Dismiss is now before the court as a Motion for Summary Judgment, the parties are entitled to present additional summary judgment evidence on the issue of whether Helena is a fiduciary under ERISA. Currently, the court has before it only the broad allegations of the parties—Helena claims it exercised no discretion over the administration of the plan and had no authority to do so, while Bollenbacher states that Helena is a fiduciary based on its being named Plan Administrator. However, there is scant evidence before the court regarding the degree to which Helena exercised any discretionary authority or control in the management of the plan or the disposition of its assets, or the degree to which Helena had any authority in the administration of the plan. In order that the court can properly address this issue on summary judgment, the parties must be afforded an opportunity to further brief the issue pursuant to Rule 56.

As a result of the foregoing, Defendant Helena Chemical's Motion to Dismiss is hereby deemed to be a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. As such, the motion is TAKEN UNDER ADVISEMENT pending further briefing. Consequently, Helena is hereby granted thirty (30) days from the date of this Order in which to file any additional brief, supporting affidavits, and/or other proper summary judgment evidence, in support of its Motion for Summary Judgment on the issue of whether Helena is a fiduciary under the terms of ERISA. Bollenbacher shall then file any response, controverting affidavits, and/or other proper summary judgment evidence on the issue of whether Helena is a fiduciary under the terms of ERISA within fifteen (15) days following service of Helena's summary judgment evidence. Helena's reply brief, if any, shall be filed within ten (10) days from the date of the filing of Bollenbacher's response.

### Plaintiff's Motion for Summary Judgment—Unenforceability of the Release and Settlement Agreement

On January 29, 1996, when Bollenbacher filed his Response to Defendant Helena Chemical's Motion to Dismiss and/or for Summary Judgment, he simultaneously filed a Motion for Partial Summary Judgment on

the issue of the enforceability of the release form he signed, which he claims is unenforceable due to lack of consideration. In addition, Bollenbacher raises several other affirmative defenses to Helena's claim that the release bars any action against the company. Defendant Helena Chemical Company filed a Reply in Opposition to this motion on February 15, 1996.

Bollenbacher alleges that the Release and Settlement Agreement ("release") is unenforceable since it was not supported by adequate consideration. The release states that Helena would pay Bollenbacher four weeks of severance pay and 12 days of vacation pay in exchange for his agreement to waive any and all claims against the company arising out of his employment or the termination of his employment with the company. Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Exh. A-1. Helena claims that this money constituted adequate consideration for Bollenbacher's waiver of claims, since he was not actually entitled to the severance pay. According to Helena, Bollenbacher "made clear that [Helena representative] Ms. Rampy explained that because he had turned down the job transfer, he effectively had resigned and was not entitled to severance." Defendant's Reply in Opposition, p. 9. Helena goes on to quote a passage from a letter Bollenbacher wrote to Gary Hancock, President and CEO of Helena Chemical Company, on November 9, 1993, wherein Bollenbacher asked Hancock to look into the circumstances surrounding Bollenbacher's termination. Helena quotes the following passage to support its allegation that Bollenbacher knew he was not entitled to severance pay:

I advised Ms. Rampy that I had not quit but was laid off and she told me that when I turned down the position at Liberty Center, I terminated my employment with Helena. She said that it was made very clear to me that I understood that I would be laid off if I did not take the position. Her attitude on this matter clearly demonstrates that I was to know without a doubt the consequences of my decision.

Defendant's Reply in Opposition, p. 9.

However, Helena does not quote the entire paragraph from Bollenbacher's letter. He completes the paragraph by stating that "I feel that the consequences were **not** made clear." Plaintiff's Brief in Support of Motion for Partial Summary Judgment, Exh. A-2, p. 4 (emphasis in original). Therefore, the entire paragraph may be interpreted as Bollenbacher's attempt to explain what Ms. Rampy's understanding of the situation was, and how he did not understand it in the same way at all.

Furthermore, Bollenbacher states in his affidavit that he received a check for the majority of his vacation pay prior to signing the release. Id., Exh. A, ¶ 12. Bollenbacher also states that he spoke with Charles Adams, a regional supervisor with Helena, regarding the terms of the release, since he was "concerned about waiving any rights I had to file a claim for long-term disability benefits." Id., ¶ 7. Bollenbacher states that Adams assured him that the release did not release Helena from any insurance claims. Id. Helena, in its response, presents the affidavit of Adams, wherein Adams states that he never told Bollenbacher that the release did not release Helena from any insurance claims. Defendant's Reply in Opposition, Exh. B, ¶ 3.

Based on the evidence presented by the parties on this issue, the court finds that a genuine issue of fact exists regarding whether or not the consideration given to Bollenbacher was adequate to support his waiver of claims against Helena. It is unclear from the record whether the severance and vacation pay given to Bollenbacher was in addition to any money to which he was already entitled based on his years of employment at the company.

Bollenbacher's other defenses to the release include fraudulent inducement, equitable estoppel, and his lack of actual or constructive knowledge of potential claims against Helena. As Bollenbacher concedes, these defenses contain elements of fraud and misrepresentation. Helena, of course, denies that any company representative made any false statement or misrepresentation to Bollenbacher in order to obtain his signature on the release. As such, the legitimacy of such defenses is based largely on the credibility of

witnesses, making such issues particularly inappropriate for determination on summary judgment. In fact, Bollenbacher admits in his brief that "[t]he evaluation of conflicting testimony necessarily requires the weighing of witnesses' credibility and as such, a case requiring such evaluation is not ripe for summary judgment." Brief in Support of Motion for Partial Summary Judgment, p. 7 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986)).

As a result of the foregoing, the court finds that genuine issues of material fact exist regarding the unenforceability of the release due to lack of consideration, and Plaintiff's Motion for Partial Summary Judgment on that issue is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant Helena Chemical Company's Motion to Dismiss is deemed by the court to be a Motion for Summary Judgment, and said motion is TAKEN UNDER ADVISEMENT pending further briefing by the parties pursuant to Fed.R.Civ.P. 56; Defendant Helena is ordered to file any additional briefing and evidence on the Motion for Summary Judgment within thirty (30) days from the date of this Order, and Plaintiff may file any responsive brief and evidence within fifteen (15) days from the date of service of Helena's summary judgment evidence. Helena's reply brief, if any, shall be filed within ten (10) days from the date of the filing of Plaintiff's response. Plaintiff's Motion for Partial Summary Judgment on the issues of the standard of review and the scope of review is DENIED; Defendants' Joint Motion for Partial Summary Judgment on the issues of the standard of review and the scope of review is GRANTED; and Plaintiff's Motion for Partial Summary Judgment on the issue of the unenforceability of the Release and Settlement Agreement due to lack of consideration is DENIED.