Aileen BARON, Plaintiff,

v.

W.W. GRAINGER, INC., Defendant.

No. 96 C 1482.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 18, 1996.

Fay Clayton, Cynthia H. Hyndman, Robinson, Curley & Clayton, P.C., Chicago, IL, Rick Allan White, Chicago, IL, for Aileen H. Baron.

Henry F. Galatz, W.W. Grainger, Inc., Skokie, IL, Brian Wegg Bulger, Timothy Alan Wolfe, Brett G. Rawitz, Lisa A. Miller, Bates, Meckler, Bulger & Tilson, Chicago, IL, for W.W. Grainger, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Aileen Baron, has filed a two-count complaint against Defendant, W.W. Grainger, Inc., ("Grainger"), alleging that defendant discriminated against her on the basis of her religion and discharged her in retaliation for complaining about such discrimination in violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e et. seq. ("Title VII"). Defendant, W.W. Grainger, Inc., has filed a motion for summary judgment on all counts. Plaintiff has filed a motion to strike defendant's reply to certain of plaintiff's responses to its Local Rule 12(M) statement, defendant's response to plaintiff's Rule 12(N) statement, and certain attached affidavits. Because the rulings on the motions to strike will affect the evidence that may be considered in the summary judgment motion, the court addresses the motions to strike first. For the reason set forth below, plaintiff's motions to strike are granted in part and denied in part, and defendant's motion for summary judgment is denied.

### FACTS

Plaintiff was first hired by defendant as a purchasing assistant in its purchasing department on April 12, 1993. The purchasing department has the primary responsibility of obtaining goods and services used by defendant in its operations. Plaintiff worked as a purchasing assistant until she was discharged on November 30, 1993.

In April or May 1993, Sheila Luna, a co-worker of plaintiff, made a statement to plaintiff to which plaintiff took offense and found to be anti-Semitic. When plaintiff told Luna that she lived in Skokie, Luna referred to the town as "Jewtown." Luna's supervisor, Linda Stone, overheard the comment. Stone later discussed the incident with Luna, informing her that such remarks were inappropriate in the workplace. Thereafter, plaintiff reported the comment to her immediate supervisor, Donald St. Aubin ("St. Aubin"). St. Aubin allegedly discussed the remark with his supervisor, Roger DeGroot ("DeGroot"). The parties dispute whether St. Aubin ever discussed the incident with

Luna. When plaintiff asked DeGroot about the action taken by defendant with respect to the comment, DeGroot informed her that the incident had been handled.

Defendant has a written manual on workplace harassment which states that supervisors should report any incidents of ethnic, religious, racial, or sexual harassment of which they become aware to the Human Resources Department. Both parties agree that the "Jewtown" comment was never documented in Luna's file or elsewhere, nor was it reported to the Human Resources Department. Defendant contends, however, that the written manual's statements are only guidelines, and that plaintiff's supervisors believed that the "Jewtown" remark did not rise to the level of harassment.

Plaintiff specifies two other incidents of discriminatory conduct: (1) Luna told her a story about a woman who was mean to her mother, and made it point to tell plaintiff that the woman was Jewish; (2) plaintiff's coworker, Jennifer Weed, mentioned to plaintiff that a Jewish woman in the personnel department was always the first to get out her fur coat and made a remark to the effect of "you people and your fur coats" (which plaintiff interpreted as referring to Jewish people). Plaintiff did not report these comments to her supervisors nor to any of defendant's management personnel. However, on several occasions plaintiff did tell DeGroot that, in general, she thought that she was being discriminated against at work. Defendant admits these allegations, but claims that when DeGroot asked plaintiff about the type of discrimination or the details surrounding it, plaintiff simply responded, "You'll find out." Plaintiff also claims that she was subject to discriminatory treatment by her supervisors; however, plaintiff fails to provide any details of such treatment, nor does she offer citations to the record in support of these allegations.

In July, 1993, plaintiff received her three month review. Plaintiff received a "3" on a scale of 1 to 6 (6 being the highest score), which meant that she was "meeting most responsibilities and objectives." The "Areas of Improvement" Section of the review stated that several complaints had been made about plaintiff's critical tone of voice and inappropriate comments when dealing with customers. Plaintiff was also criticized for her uncooperative behavior and unprofessional demeanor. Plaintiff reviewed her evaluation and made oral and written comments about her disagreement with sections of the report. The parties disagree as to whether plaintiff commented on the negative evaluations of her interpersonal skills. Prior to this three month review, St. Aubin estimated that he received fifty complaints regarding plaintiff's unprofessional behavior.

In October, 1993, plaintiff received a six-month performance evaluation. Plaintiff was rated as meeting "only some responsibilities and objectives," which amounted to a "2" on the 1 to 6 scale. The review stated that plaintiff's quality of work had failed to improve; in particular, her error ratio had increased from a 3.2% to a 4.3%. Plaintiff was again criticized for uncooperative behavior and unprofessional demeanor. St. Aubin stated in the review that defendant had received seven complaints about plaintiff's unprofessional behavior and that, if improvement did not follow, disciplinary action, up to and including termination, would be taken. Plaintiff reviewed her evaluation, but unlike with the three month review, she did not make any written comments.

Plaintiff alleges that around the time of her three month review, St. Aubin began keeping a "secret file" to collect derogatory comments about plaintiff's work and demeanor. Defendant admits that it began documenting plaintiff's performance in detail, and that it kept such documentation in the purchasing department where plaintiff would not have access to it. Defendant also admits that it did not keep such files on other employees. However, defendant explains that it undertook such procedures because it was concerned that plaintiff would retaliate against the complainants if she were to discover their identity. Moreover, defendant claims that, contrary to plaintiff's assertions, such documentation did not begin until after plaintiff's three month review.

In late November 1993, DeGroot, St. Aubin, and Michael Regan of the Human Resources Department ("Regan") determined

that plaintiff had not improved in her work and her behavior. On November 30, 1993, plaintiff was discharged.

Plaintiff's complaint asserts that defendant did not properly respond to her complaint concerning her co-worker's "Jewtown" comment. Moreover, plaintiff claims that, because she complained about discrimination to her supervisors and made statements that she may need to file a lawsuit to redress her injuries, she was discharged from her job. Plaintiff alleges that such conduct constitutes discrimination on the basis of religion and retaliatory discharge in violation of Title VII. Defendant files the instant motion for summary judgment on all counts.

### DISCUSSION

#### I. *Motions to Strike*

Local Rule 12(M)(3) requires a movant for summary judgment to set forth material issues of fact for which she believes there is no dispute. Rule 12(N)(3) permits the non-moving party to respond to such statements and to file any additional facts that require the denial of summary judgment. The movant may then respond to the additional facts set forth in the 12(N) statement. Both parties may attach affidavits and other materials to support their statements of fact, and must provide citations to the record.

In this case, defendant has filed a reply to certain of plaintiff's responses to its 12(M) statement, a response to the additional facts set forth in plaintiff's 12(N) statement, an additional set of facts which support summary judgment, and several supplementary affidavits. Plaintiff contends that such filings are contrary to Rule 12(M) and that, accordingly, they should be stricken or, in the alternative, plaintiff should have an opportunity to file a "reply." This court agrees in part and disagrees in part.

■ As defendant argues, plaintiff's responses to defendant's 12(M) statements do not comply with Rule 12(N). Instead of simply admitting or denying the facts in the 12(M) statement, plaintiff responded with additional facts and issues. Plaintiff also provided a separate "additional facts" section. Because Rule 12(M)(3) allows defendant to

reply to any additional facts submitted in plaintiff's Rule 12(N) statement, the form in which such facts are presented should not preclude defendant from having that opportunity. Accordingly, plaintiff's motion to strike defendant's "reply" and "response" to plaintiff's additional facts is denied. Moreover, because plaintiff may provide affidavits or other materials in support of its 12(N) responses to defendant's 12(M) statements, this court finds that defendant's submission of supplementary affidavits in support of its responses to plaintiff's additional facts is within the spirit of Rule 12(M) and, thus, will not be stricken.

Notwithstanding these rulings, this court emphasizes that Local Rules 12(M) and 12(N) were designed to facilitate the summary judgment process, not the deforestation of North America. The paper battle must end somewhere. This court will not permit defendant, at this late stage, to allege yet additional facts in support of its motion for summary judgment. Accordingly, defendant's submission of additional facts in its response/reply (paragraphs 139–153) is stricken, and plaintiff's request to file a "reply" is denied.

#### II. *Summary Judgment Standard*

A court should grant summary judgement if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The simple assertion that a factual dispute exists is not enough to defeat a Rule 56(c) motion. To defeat a motion for summary judgement, the non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202

(1986). In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-moving party. *Id.*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

### III. *Discrimination on the Basis of Religion*

■ To set forth an individual case of intentional discrimination under Title VII, a plaintiff has two options; she may satisfy her burden of proof by offering direct evidence of discriminatory intent or demonstrate such intent indirectly by following the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case by a preponderance of the evidence. *Sample v. Aldi,* 61 F.3d 544, 547 (7th Cir.1995). Thereafter, the defendant has the burden of articulating a legitimate non-discriminatory reason for the adverse action. *Id.* Once the defendant meets her burden of production, the presumption of discrimination created by the prima facie case disappears, and the plaintiff must demonstrate that the defendant's proffered reasons are merely a pretext for discrimination. *Id.* At all times, the plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her. *Id.*

In this case, plaintiff attempts to establish her prima facie case by both direct and indirect evidence. To support her case with direct evidence, plaintiff alleges that defendants terminated her because she was " 'very vocal,' disrespectful, and unprofessional." These words, plaintiff asserts, are simply code words for discrimination; they are based on a stereotype of the "Jewish American Princess." Plaintiff offers these same evidence to demonstrate pretext. Because, as discussed below, this court concludes that plaintiff has made out a prima facie case under the indirect, burden-shifting method of proof, and that plaintiff's prima facie case merges with her arguments on pretext, it need not address whether plaintiff has provided sufficient direct evidence to establish a prima facie case.

■ To make a prima facie case for discharge of the grounds of religious discrimination based on the indirect method under the *McDonnell Douglas* framework, plaintiff must show that: (1) she was a member of a protected class; (2) she was doing her job well enough to meet her employer's legitimate expectations; (3) she was discharged; and (4) her employer sought a replacement for her. *Fisher v. Transco Services–Milwaukee, Inc.,* 979 F.2d 1239, 1243 (7th Cir. 1992). The parties do not dispute that plaintiff satisfies elements 1, 3, and 4 of her prima facie case.

■ Plaintiff alleges that, to demonstrate the second element of her prima facie case, she need only "put on objective evidence that [she] is sufficiently competent to satisfy the legitimate expectations of an employer." *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1117 (7th Cir.1993), *cert. denied, Pilditch v. Gool,* 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994). Plaintiff avers that she met the objective requirements of her position of purchasing assistant. For example, her attendance record was excellent, and her error ratio for typographical and other errors on purchase orders was within the department standard and was better than several of her co-workers. Defendants do not dispute this evidence, but allege that these were not the reasons for plaintiff's termination; she was terminated because of her unprofessional demeanor and inappropriate comments to customers and co-workers. Plaintiff responds that defendant's subjective assessments are actually a pretext for discrimination; i.e., she was being stereotyped as a "Jewish American Princess," and documentation of such criticism was in retaliation for her complaints of discrimination. Under such circumstances, this court finds that "issue of legitimate performance is best merged with pretext." *Fisher,* 979 F.2d at 1243.

■ Defendant argues that plaintiff's prima facie case contains an additional requirement: she must show that the non-Jewish employees who "suffered from her shortcomings were not fired." Plaintiff has offered some evidence to suggest that non-Jewish employees who were reproached for swearing, rated low in communication skills,

or reprimanded for making anti-Semitic remarks to co-employees were not fired. Defendant disputes that such employees' isolated instances of unprofessional conduct compare with plaintiff's ongoing uncooperative behavior and poor interpersonal skills. Notwithstanding these arguments, defendant has met its burden of production by articulating a legitimate non-discriminatory reason. Accordingly, this court need not address further the merits of plaintiff's prima facie case. *Sample*, 61 F.3d at 548 (" 'Where the defendant has done everything that would be required of him had the plaintiff properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.' ") (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)).

■ Defendant contends that plaintiff was terminated because of her unacceptable behavior, poor job performance, and failure to improve on her overall performance. To withstand defendant's motion for summary judgment, plaintiff must demonstrate pretext by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). Plaintiff admits that she does not know whether defendants terminated her because of her religion, but argues that the reasons proffered for her termination are false. Specifically, plaintiff asserts that defendants did not take plaintiff's complaints of discrimination seriously. For example, Luna's "Jewtown" remark was never documented or reported to the Human Resources Department. Moreover, plaintiff alleges that, after she complained of discrimination and threatened to file a lawsuit, defendant began secretly soliciting and documenting complaints about her performance so that they would have a record to support a future termination decision. Although plaintiff has not provided extensive evidence of pretext, the facts that (a) defendant's investigation of plaintiff's complaints did not include documentation or reports to the Human Resources Department, *cf. Kantar v. Baldwin Cooke Co.*, 1995 WL 692022 (N.D.Ill. Nov. 20, 1995) (record revealed that the defendant regarded seriously and thoroughly investigated the plaintiff's complaints), and that (b) defendant kept a record of complaints against plaintiff where (i) no such records were kept for defendant's other employees and where (ii) plaintiff would not have access to or be able to comment on them raises enough questions to withstand defendant's motion for summary judgment.

### IV. *Retaliatory Discharge*

■ Title VII mandates that an employer may not discriminate against any employee for opposing any practice made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliatory discharge, plaintiff must demonstrate that: (1) she was engaged in statutorily protected expression; (2) an adverse employment action was taken against her; and (3) a causal link exists between the protected expression and the adverse action. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1457 (7th Cir.1994). If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* Once defendant articulates such a reason, the burden shifts back to plaintiff to establish that defendant's proffered reasons are pretextual. *Id.*

Both parties agree that plaintiff engaged in statutorily protected expression by complaining of Luna's anti-Semitic remarks and that plaintiff's termination is an adverse action. Plaintiff also asserts that her additional, albeit unspecific, complaints of discrimination to defendant were "protected expressions," and that her complaints spurred a chain of adverse reactions by defendant which lead to her discharge. This chain includes mediocre three-month and six-month performance reviews, secret documentation of complaints about plaintiff which defendant did not maintain on any other employee, and a failure to discuss such complaints with plaintiff or provide her an opportunity to respond to them. In particular, plaintiff points to a memorandum sent by DeGroot to a representative in the

Human Resources Department stating that: "[T]he entire department is on edge and afraid to even approach Aileen, for fear … [they'll] be written up in her notebook she keeps by her side for the 'lawsuit' she's told everyone about." Plaintiff claims that this memo is evidence that defendant terminated plaintiff because she complained of discrimination and contemplated filing a lawsuit to redress her injuries.

■ Again, plaintiff has not offered extensive evidence of pretext on her claim of retaliatory discharge. However, defendant does not dispute that it kept confidential documents on plaintiff's performance, and that it did not, nor had it ever, kept such documentation on another employee. Although defendant may have had good intentions in following such procedures, such intentions will not be assumed in ruling on summary judgment. *See Sarsha v. Sears Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir. 1993) (summary judgment standard is applied with added vigor in employment discrimination cases where intent and credibility are crucial issues). Because the court must make all reasonable inferences in favor of the plaintiff, defendant's motion is denied.

### CONCLUSION

For the reasons set forth above, plaintiff's motions to strike are denied in part and granted in part, and defendant's motion for *summary judgment is denied.* At the status conference set for November 20, 1996, the court will set a final pretrial schedule.