**Mark INFANTINO, Plaintiff,**

v.

**WASTE MANAGEMENT, INC., and Unum Life Insurance Company of America, Defendants.**

**No. 95 C 0127.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 1997.

John W. Damisch, Mark William Damisch, Barclay & Damisch, Ltd., Chicago, IL, W. Randal Baudin, McCuaig, Haeger, Bolz, McCarthy & Boudin, West Dundee, IL, for Plaintiff.

Mary Patricia Benz, Quinlan & Crisham, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Mark Infantino alleged in his complaint that defendants Waste Management and UNUM Life Insurance wrongfully terminated plaintiff's disability payments in violation of 29 U.S.C. § 1002 *et seq.* Defendants have filed for summary judgment. Additionally, both parties have filed motions to strike certain filings presented by opposing counsel during the briefing of defendants' motion for summary judgment. Defendants have moved to strike plaintiff's surreply regarding his Rule 12(N) statement of facts. Plaintiff has moved to strike defendants' supplemental Rule 12(M) statement and has moved to strike defendants' objections to plaintiff's Rule 12(N) statement. As to these motions to strike, plaintiff's motion to strike defendants' objections to the Rule 12(N) statement is denied, plaintiff's motion to strike defendants' supplemental Rule 12(M) statement is granted, and defendants' motion to strike plaintiff's surreply regarding plaintiff's 12(N) statement is granted. Upon evaluation of the appropriate materials and for the reasons stated herein, defendants' motion for summary judgment is granted.

## DISCUSSION

Plaintiff, now 41 years old, suffered a serious back injury in July 1989 when he was 33 years of age. At that time plaintiff worked as the maintenance manager for the trucking fleet at Waste Management, supervising 19 people at a salary of $53,100. Plaintiff had held that management position since 1983, and before that plaintiff had spent ten years as a mechanic fixing refuse trucks. Plaintiff has not graduated from high school.

Plaintiff's back injury left him unable to continue his job because the job often required heavy mechanical duties to assist other workers. Plaintiff ceased performing any work for Waste Management and received disability payments pursuant to an insurance policy with UNUM (Exhibit 1 to Affidavit of Donald Jensen, hereinafter cited as "Disability Plan"). The Disability Plan stated, "When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit...." Disability Plan at 13. The Plan defined "disabled" as follows: "after benefits have been paid for 24 months the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education, or experience." Disability Plan at 11. The Plan also had the following definition for "partial disability":

> "because of injury or sickness the insured, while unable to perform all the material duties of his regular occupation on a full-time basis, is:
>
> 1. performing ... another occupation on a part-time or full-time basis; and
>
> 2. earning currently 20% less per month than his indexed pre-disability earnings due to that same injury or sickness." Disability Plan at 11.

Benefits under partial disability were reduced from full disability payments by the percentage that current income fell below pre-injury income, i.e. an employee making 50% of his previous salary received 50% of his full disability payment.

In 1992, UNUM placed plaintiff under hidden surveillance and videotaped him performing car repair work and carrying objects without difficulty, except that plaintiff walked most of the time with a cane in his left hand. In April 1993, UNUM required plaintiff to

see Dr. Timothy Payne to determine plaintiff's eligibility for continued benefits, and Dr. Payne concluded that plaintiff could return to work in a light or medium work category. In May 1993, UNUM had a rehabilitation specialist examine plaintiff's medical reports to find examples of vocational alternatives, of which the specialist was able to find seven possibilities. On July 22, 1993, UNUM informed plaintiff that it would not release any further benefits because plaintiff's injuries were not so severe that he met the requirement of being unable to perform any gainful occupation.

Plaintiff then suffered a relapse of his back injury and was hospitalized from August 10 through August 18, 1993. On September 8, 1993, after reviewing plaintiff's medical condition and new injury, UNUM reaffirmed its decision to deny benefits after concluding that plaintiff's condition had not significantly changed. Plaintiff's physician, Dr. Irwin Carson, wrote a letter to UNUM on September 20, 1993, that stated:

"I am very much in favor of having Mark get back to some job where he can be gainfully employed; however, because of his ongoing condition, it is questionable as to whether this will ever occur.

As I wrote to you in June of 1993, I indicated that it would be beneficial for Mark to return to some type of gainful employment.... The job will have to be individualized and only after a trial basis could he be okayed to return on a permanent basis." (Exhibit 15 to Affidavit of Donald Jensen, hereinafter cited as Carson Letter).

Plaintiff filed his complaint against the defendants in Illinois state court in December 1993. The case was removed to federal court in January 1995. Plaintiff in February 1996 had a consulting service perform a vocational review so plaintiff could prepare a response to UNUM's rehabilitation specialist. The review surveyed companies with jobs in the seven occupations that UNUM's specialist thought plaintiff could still perform with his injury. Plaintiff's survey located one job available in the Chicago area that plaintiff could perform—a tune-up garage supervisor and manager. The position paid an annual salary of $26,000 plus commissions, but the consulting service did not feel that this job

was a reasonable alternative for plaintiff in view of his previous salary. As a result, the survey concluded that there were no jobs available for plaintiff that matched his education, skills, and job experience. Plaintiff has also filed an affidavit listing 29 companies at which he has unsuccessfully sought employment from since 1991.

The defendants, in their motion for summary judgment, contend that both their evidence and plaintiff's evidence conclusively demonstrate that plaintiff can perform gainful work. In the course of briefing this motion for summary judgment, the parties have made three preliminary motions questioning the propriety of procedures used by opposing counsel under Local General Rules 12(M) and 12(N). The court will first address these preliminary motions.

I. *Plaintiff's Motion to Strike Defendants' Objections to Plaintiff's Rule 12(N) Statement*

 Plaintiff first moves to strike defendants' objections to plaintiff's 12(N) statement because many of the objections do not provide specific references to the record. Rule 12(M) directs the movant to reply pursuant to the response procedure stated in Rule 12(N). That procedure, outlined in Rule 12(N)(3)(a), requires the movant to make specific references to the record "in the case of disagreement." Thus, when there is no disagreement and the movant admits certain of the facts contained in the opposing party's Rule 12(N) statement, the movant may still contest the materiality of any additional facts the opposing party has presented under Rule (12)(N)(3)(b). Because defendants did not violate any procedure stated in Local General Rules 12(M) or 12(N), plaintiff's motion to strike the defendants' objections is denied.

II. *Plaintiff's Motion to Strike Defendants' Supplemental Rule 12(M) Statement*

 Plaintiff also moves to strike defendants' supplemental Rule 12(M) statement of undisputed material facts. Although defendants claim that the supplemental statement was necessary to correct factual inaccuracies in plaintiff's 12(N) statement, Rule 12(M) designates the proper procedure for replying to the 12(N) statement. Defendants also

argue that there was a need to correct factual inaccuracies in plaintiff's response memorandum. A movant may cite new evidence in its reply if the non-movant has cited additional factual issues without including them in its 12(N) statement (see *Baron v. W.W. Grainger, Inc.*, 944 F.Supp. 689, 692 (N.D.Ill.1996)) or if the non-movant has raised an entirely new issue. See *Viero v. Bufano*, 925 F.Supp. 1374, 1380 (N.D.Ill.1996). Because defendants have not cited a violation by plaintiff of Rule 12(N) or any new issues that plaintiff has raised, defendants supplemental statement is not permitted under Rule 12(M) and plaintiff's motion to strike defendants' supplemental Rule 12(M) statement is granted. See *Viero*, 925 F.Supp. at 1379.

### III. Defendants' Motion to Strike Plaintiff's Surreply

█ Defendants move to strike plaintiff's response to defendant's objections to plaintiff's Rule 12(N) statement of facts, claiming that plaintiff's response is a surreply that the local rules do not permit. This court agrees. Under Rule 12, the movant has one last chance to respond to what the nonmovant has added in its response. *Viero*, 925 F.Supp. at 1380. Plaintiff's acquisition of that last chance to respond is not permitted under this court's local rules, and thus defendants' motion to strike plaintiff's response is granted[1].

### IV. Defendants' Motion for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir. 1996). The non-moving party is entitled to the benefit of all reasonable inferences. *Id.*

### A. The Insurance Contract Requires the Court to Review UNUM's Decision under the Arbitrary and Capricious Standard

█ A court reviews a denial of benefits *de novo* unless the benefit plan confers power on the administrator to exercise discretion

to determine eligibility for benefits, in which case the court must decide whether the denial was arbitrary and capricious. *Ramsey v. Hercules, Inc.*, 77 F.3d 199, 202 (7th Cir. 1996). In this matter, the Disability Plan required the insured to provide "proof" of his disability. This language is quite similar to that in *Patterson v. Caterpillar, Inc.*, 70 F.3d 503 (7th Cir.1995), where the policy stated that "benefits will be payable only upon receipt by the ... Company of such notice and such due proof, as shall be from time to time required, of such disability." 70 F.3d at 505. *Patterson* held that this language was sufficient to grant the administrator discretion in determining eligibility, and thus the court reviewed the decision under the arbitrary and capricious standard. *Id.* Although plaintiff Infantino attempts to distinguish the *Patterson* case on the basis that the policy in *Patterson* used the word "such" before "due proof," this court finds no practical difference between the language. An administrator who requests "proof" of disability must necessarily examine the evidence submitted and determine whether it suffices as proof of the alleged disability. B*ollenbacher v. Helena Chemical Co.*, 926 F.Supp. 781, 787 (N.D.Ind. 1996) (policy's "proof" requirement was sufficient to confer discretion on administrator). This court considers *Patterson* to be binding precedent and will review the denial of benefits using the arbitrary and capricious standard.

### B. UNUM's Decision to Deny Coverage was not Arbitrary and Capricious

█ Under the arbitrary and capricious standard, this court will uphold the administrator's decision so long as that decision is based on a reasonable interpretation of the plan's language and the evidence in the case. *Daill v. Sheet Metal Workers' Local 73*, 100 F.3d 62, 68 (7th Cir.1996). All questions of judgment are left to the administrator, and a court must be very confident that the administrator overlooked something important or seriously erred in appreciating the significance of the evidence to overturn the administrator's determination. *Patterson*, 70 F.3d at 503.

---

1. The court notes, however, that even if the court were to have denied defendants' motion to strike and fully considered the facts argued in plain- tiff's surreply, the outcome of the court's ruling on defendants' motion for summary judgment would have been the same.

The dispositive issue before the administrator here was whether plaintiff is disabled because he is unable to perform "any gainful occupation for which he is reasonably fitted by training, education, or experience." Disability Plan at 11. Although plaintiff emphasizes his doctor's report and his employment survey to show his lack of employment opportunity, both actually show the reasonableness of UNUM's decision that plaintiff can perform some gainful occupation. Plaintiff's physician, Dr. Irwin Carson, wrote to UNUM that "I am very much in favor of having Mark get back to some job where he can be gainfully employed ... it would be beneficial for Mark to return to some type of gainful . "employment." Carson Letter 09/20/93. Although Dr. Carson also stated that any such employment would have to be on a trial basis, Dr. Carson directly recommended that plaintiff attempt to return to work. Thus, Dr. Carson's letter does not support plaintiff's claim that he is unable to perform any gainful occupation.

Plaintiff also relies on his employment survey that claimed there were no jobs available under the seven alternative occupations which UNUM recommended. The survey did locate a position as a tune-up garage manager/supervisor, but the survey rejected the job because its starting salary was about half of plaintiff's previous pay. UNUM's policy does not give full disability benefits if the insured can perform "any gainful occupation for which he is reasonably fitted by training, education, or experience." Disability Plan at 11. Acceptance of a lower starting salary does not mean that plaintiff is not reasonably fitted to the occupation, especially in view of his lack of education. See *Hammond v. Fidelity & Guaranty Life Insurance Co.*, 965 F.2d 428, 430 (7th Cir.1992) (plaintiff was reasonably fitted to perform nonsupervisory work in other retail business after working as a grocery supervisor). Moreover, the Disability Plan specifically contemplates acceptance of a lower-paying job because it offers partial disability compensation in such an event. A physically disabling disease does not necessarily preclude meaningful semi-sedentary work in a different occupation. *Id.* Because plaintiff had the opportunity and physical ability to obtain a job paying $500 per week, this . court concludes that UNUM's decision that plaintiff could perform work was not arbitrary and capricious, and thus the defendants' motion for summary judgment is granted[2]. .

### CONCLUSION

For the above stated reasons, plaintiff's motion to strike defendants' objections to plaintiff's 12(N) statement is DENIED, plaintiff's motion to strike defendants' supplemental Rule 12(M) statement is GRANTED, and the defendants' motions to strike and for summary judgment are both GRANTED. The case is dismissed in its entirety. The parties are to bear their own costs.

---

**2.** This court notes that it would also have granted defendants' summary judgment motion applying a *de novo* standard.