**Judith PERLMAN, Plaintiff,**

v.

**SWISS BANK CORPORATION COMPRE-HENSIVE DISABILITY PROTECTION PLAN, Swiss Bank Corporation Short-Term Disability Plan, Swiss Bank Corporation Long-Term Disability Plan, Swiss Bank Corporation, Thomas L. Jacobs & Associates, Inc., UNUM America, and First UNUM Life Insurance Company, Defendants.**

No. 95 C 6610.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 29, 1997.

George Edward Weaver, Law Office of George E. Weaver, Chicago, IL, for Judith Perlman.

Thomas B. Quinn, Jody Lynn Rudman, Schiff, Hardin, & Waite, Chicago, IL, Mary Patricia Benz, Catherine J. Casey, Quinlan & Crisham, P.C., Chicago, IL, for Swiss Bank Corp. Short–Term Disability Plan, Swiss Bank Corp. Long–Term Disability Plan, Swiss Bank Corp.

Mary Patricia Benz, Catherine J. Casey, Quinlan & Crisham, P.C., Chicago, IL, for Thomas L. Jacobs & Associates, Inc., UNUM America, UNUM Life Ins. Co. of America.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Judith Perlman, left her position as business manager with Swiss Bank Corp. ("SBC") on September 12, 1994. She claimed to be taking a disability leave, and shortly thereafter she filed a claim for short-term disability benefits. The claim was processed by defendant First UNUM Life Insurance Company ("UNUM").[1] After an initial review and an appeal, Ms. Perlman's claim was denied. She filed this suit under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover short and long-term disability benefits allegedly due to her under the terms of her coverage from SBC. Both parties have moved for summary judgment. For the following reasons, both motions are denied.

### Background

On March 22, 1988, Ms. Perlman was involved in a serious automobile accident. As a result, she had several surgical procedures to repair damage done to her gastrointestinal tract. Ms. Perlman also suffered from several mental problems related to the trauma of the accident, including migraine headaches and post-traumatic stress disorder. On April 15, 1992, Ms. Perlman again was involved in a car accident, but she suffered no physical injuries on that occasion.

Following the 1988 accident, Ms. Perlman entered the regular care of Dr. Carl Jackson. Dr. Jackson is a psychiatrist who has been seeing Ms. Perlman twice a week in therapy sessions since April 1988. Ms. Perlman also has sought treatment periodically from Drs. Henry Ruder and Robert Craig who both specialize in gastroenterology and from Dr. Frederick Freitag at the Diamond Headache Clinic.

The 1988 accident affected Ms. Perlman's work. Immediately following the accident, Ms. Perlman was on long-term disability leave for almost a year. She subsequently went on disability leave two more times, once in 1991 and again in 1992. These leave periods all were prompted by recurring conditions traceable to the injuries and resulting mental trauma Ms. Perlman suffered in the 1988 accident. She returned from her last leave on September 1, 1992, and had no extended absences due to sickness or illness prior to her departure on September 12, 1994.

Following her departure, Ms. Perlman filed a claim for short-term disability benefits with UNUM. Under the terms of her coverage, short-term disability benefits, which could last up to 26 weeks, were paid by SBC

---

1. Defendant UNUM America is the parent company of First UNUM Life Insurance Company. The remaining Swiss Bank defendants all were dismissed in a prior order.

but administered[2] by UNUM. After the expiration of the 26 week short-term disability benefit period, an eligible insured could receive long-term disability benefits which were administered and paid by UNUM. An insured who had been receiving short-term disability benefits for 26 weeks would be switched over automatically to long-term disability benefits if the disability continued to persist.

Ms. Perlman's short-term disability claim was assigned to Robert D'Antonio. Mr. D'Antonio reviewed the "Attending Physician's Statement" filed by Dr. Jackson on October 4, 1994. In that form, Dr. Jackson listed her diagnosis as recurrent intestinal obstruction with impaired gastrointestinal function, post-traumatic non-classical migraine, and post-traumatic stress disorder. He described these problems as "chronic disorders with downhill course" and that she had a "poor prognosis." Dr. Jackson further stated that Ms. Perlman was "unable to work at this time" and that her absence would be "very extended." Following his receipt of this statement, Mr. D'Antonio requested additional medical records to support Ms. Perlman's claim. After a short delay, Dr. Jackson sent UNUM records of his entire treatment of Ms. Perlman as well as records from some other care providers including the Diamond Headache Clinic.

Mr. D'Antonio sent these records to Kathleen Dolan, a nurse who works for UNUM. Based on her review of the records and her belief that this was a "M & N [mental and nervous] claim" with a history of medical complications from the 1988 accident, Ms. Dolan recommended an independent medical examination for Ms. Perlman's headaches, chronic depression, and post-traumatic stress disorder. Ms. Dolan also suggested that Ms. Perlman undergo a CAT scan and an MRI of her brain. These recommendations were written down in a memorandum and sent to Mr. D'Antonio.

Despite these recommendations, Mr. D'Antonio did not request any tests or an independent medical examination of Ms. Perlman. In late December 1994, he did request and review the records of Dr. Craig, one of Ms. Perlman's gastroenterologists, and he spoke with Dr. Jackson on the phone concerning her condition. After completing his review of the medical records which had been submitted, he denied her claim for short-term disability benefits. On January 4, 1995, Mr. D'Antonio wrote that although the "medical documentation received does indicate a recurrent intestinal condition as well as Post Traumatic Stress Disorder ... based on the information in our claim file, these conditions do not prevent you from performing the material duties of your occupation." In response to a letter from Ms. Perlman's attorney, Mr. D'Antonio provided further clarification concerning the materials he reviewed to reach his decision and the rationale for that decision. In that letter of January 30, 1995, Mr. D'Antonio stated that "the information received doesn't clearly show how these conditions are disabling. The medical information from Dr. Jackson ... does not show that the frequency and severity of the migraines are such that the claimant cannot work."

Ms. Perlman appealed this decision through the UNUM appeals process. Carol Stanton, an appeals analyst, reviewed Ms. Perlman's claim as well as additional medical records which she provided in support of the appeal. Ms. Stanton discussed certain issues concerning the appeal with two UNUM nurses, Diana Martin and Christine Shanahan, but neither of these nurses actually reviewed the file. On July 21, 1995, Ms. Stanton denied the appeal, and in a written letter she explained that "[w]e do not see a change in your medical condition which necessitated you to stop work. The records do not show a level of impairment which would restrict or limit you from performing the duties of your regular job given that you have worked with these conditions in the past." Following this denial, Ms. Perlman filed suit seeking to recover disability benefits.

*Scope of Review*

■ Ordinarily, the denial of benefits to a participant in an ERISA plan is subject to *de novo* review. *Firestone Tire & Rubber Co. v.*

---

2. Administration of the disability benefits program included determinations of eligibility.

*Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). If, however, the plan delegates authority to interpret its terms to the plan administrator or fiduciary, a court will review those interpretations under an arbitrary and capricious standard. *Id.; Petrilli v. Drechsel,* 94 F.3d 325, 329 (7th Cir.1996). A plan does not have to use any specific language or "magic words" to have discretion. *Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 815 (7th Cir.1997). The Seventh Circuit has held that language in a plan requiring "such due proof as shall be from time to time required" of a disability is enough to invoke the arbitrary and capricious standard. *Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 505 (7th Cir.1995).

 In the instant case, UNUM's plan states that "[t]he insurance company will determine whether you are disabled for Plan purposes. In order for the payments to continue, you may be required to furnish proof of your continuing disability and show that you are under the direct care of a licensed physician." UNUM argues that this language is sufficient to grant it discretion and bring review of its decision within the arbitrary and capricious standard. Ms. Perlman contends that this language does nothing more than state the obvious: an insured claiming disability benefits must provide proof of a disability. Although Ms. Perlman's argument is a sensible reading of the language, other cases interpreting this language have held that this plan language gives discretion to UNUM and invokes the arbitrary and capricious standard of review. In *Infantino v. Waste Management, Inc.,* No. 95 C 0127, 1997 WL 30992 (N.D.Ill. Jan.23, 1997), Judge Holderman found the *Patterson* decision to be "binding precedent" and refused to distinguish between the language in *Patterson* and the language in UNUM's plan. *Id.* at *4; *accord Bollenbacher v. Helena Chem. Co.,* 926 F.Supp. 781, 786–87 (N.D.Ind. 1996); *but see Lehmann v. UNUM Life Ins. Co.,* 916 F.Supp. 897, 900 (E.D.Wis.1996)

(holding that UNUM did not identify any language granting it discretion to determine eligibility for benefits).[3] Therefore, he reviewed UNUM's decision using the arbitrary and capricious standard. *Infantino,* 1997 WL 30992, at *4. Since I agree that Patterson appears to require this interpretation, I also will review UNUM's denial of Ms. Perlman's claim under the arbitrary and capricious standard.

### Review of Denial of Benefits

 Even using a more deferential standard, I find that UNUM's denial of benefits to Ms. Perlman was arbitrary and capricious. Under this standard of review, a court should consider the following factors: "the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which the decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995). Several of these factors favor Ms. Perlman.[4]

 UNUM's decision is clouded by a potential conflict of interest. Although Ms. Perlman's claim was for short-term disability benefits, which would be paid by SBC, Mr. D'Antonio and Ms. Stanton were aware that this claim could involve long-term disability benefits, which would be paid for by UNUM. In his memorandum referring the file to Nurse Dolan, Mr. D'Antonio noted that this was a "shared case w/LTD ." Pl.Ex. D at 001165. Ms. Stanton also was aware of the "shared" nature of this claim from reviewing the referral form between Mr. D'Antonio and Nurse Dolan. Stanton Dep. at 46. Given the UNUM employees' knowledge about the long-term nature of this claim, UNUM's role as decisionmaker for the grant or denial of benefits conflicts with its role as an insurer liable for the payment of long-term benefits. *See Mers v. Marriott Int'l Group Accidental*

---

3. *Lehmann* did not address the impact of *Patterson* on the discretionary nature of the language in UNUM's plan.

4. In conducting this analysis, I will only consider those materials which were reviewed by UNUM

in its decisionmaking process. Post-hoc justifications or newly submitted evidence in support of summary judgment will not be considered in this analysis. *See Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994).

*Death and Dismemberment Plan,* 949 F.Supp. 1323, 1329 (N.D.Ill.1996). This conflict casts doubt on the impartiality of UNUM's decision.[5]

The complexity of the issues favors Ms. Perlman. Mr. D'Antonio admitted that her claim was one of the more complex claims that he handled during his tenure at UNUM. D'Antonio Dep. at 17. Despite this fact, Mr. D'Antonio, who had received only some basic training in medical terms and conditions, D'Antonio Dep. at 27–28, did not seek any independent medical evaluation of Ms. Perlman's claim or have the tests recommended by Nurse Dolan performed on Ms. Perlman. Def. Resp. to Pl. 12(M) Statement ¶ 17. Mr. D'Antonio's belief in the complexity of Ms. Perlman's claim combined with a lack of knowledge and outside input raise the possibility that UNUM's decision was arbitrary and capricious.

The process afforded to the parties, the third factor in the analysis, was superficially fair and reasonable. Ms. Perlman had the opportunity to present her claim and any supporting medical records during the initial review, and UNUM reviewed these materials as well as additional materials it requested from other treating physicians. She and her attorney communicated with Mr. D'Antonio regarding her claim, and she was notified promptly about its status. In the letter denying her benefits, UNUM informed Ms. Perlman about the appeals process. Ms. Perlman was permitted to and did submit additional medical information and other materials on appeal.

UNUM, however, did not utilize experts to the extent necessary in its evaluation of Ms. Perlman's claim. In fact, UNUM did not consult any outside experts when reviewing the claim, Stanton Dep. at 17–18, and the few people with any medical training who were consulted gave the claim only a cursory review. Although Nurse Dolan recommended an independent medical examination, CAT Scan, and MRI, Mr. D'Antonio did not follow any of these recommendations despite the admitted complexity of the claim. On appeal, Ms. Stanton spoke with Ms. Martin and Ms. Shanahan, both UNUM nurses, about the claim. Yet neither Ms. Martin nor Ms. Shanahan reviewed Ms. Perlman's records or saw her file. Stanton Dep. at 20; Martin Dep. at 3; Shanahan Dep. at 16, 20. Moreover, Ms. Stanton did not ask Ms. Martin or Ms. Shanahan for their general opinion on Ms. Perlman's claim but limited her inquiries to isolated questions which she could not recall because they were not "anything specific." Stanton Dep. at 20, 73. Ms. Martin recalls only being asked to review Ms. Stanton's denial of benefits letter to ensure that all medical terminology had been used correctly. Martin Dep. at 13–14. The non-use of any outside expert assistance and the limited use of inside expert assistance weighs heavily against UNUM.

Finally, UNUM's reasoning for denying Ms. Perlman's claim is not sound. Both Mr. D'Antonio and Ms. Stanton admitted that they believed that Ms. Perlman suffered from the ailments noted in her medical records and the attending physician's statement and that no medical evidence in the file contradicted the existence of these problems. Pl.Ex. D at 001138; Stanton Dep. at 43–44, 66–67. Nevertheless, they concluded that this medical evidence did not support a finding of disability. D'Antonio Dep. at 75; Pl. Ex. D at 001039. This conclusion, however, overlooked several important considerations. Neither Mr. D'Antonio nor Ms. Stanton knew anything about Ms. Perlman's job beyond the fact that she was a lawyer, and they failed to gather any information about her particular responsibilities. D'Antonio Dep. at 60–61; Stanton Dep. at 24, 71–72. Yet this job information, as recognized by UNUM's own nurses, is important for a disability determination. Martin Dep. at 5–6; Shanahan Dep. at 24–25.

In addition, both Mr. D'Antonio and Ms. Stanton acknowledged that their decision to deny benefits was motivated, at least in part, by the fact that they saw nothing in the

**5.** Contrary to Ms. Perlman's argument, the existence of a conflict of interest does not change the standard of review employed by the court. *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57. Rather, it is a factor to consider in determining whether the insurer's decision was arbitrary and capricious. *Id.*

record to show a change in Ms. Perlman's condition which would force her to stop working. D'Antonio Dep. at 102; Stanton Dep. at 37–38; Pl.Ex. D at 001038. UNUM, however, had no information regarding the impact of Ms. Perlman's condition on her job performance or the impact of her job on her physical and mental condition in the weeks prior to her departure. D'Antonio Dep. at 81, 103–04; Stanton Dep. at 28–29, 71–72.

The balance of these factors tips heavily in favor of Ms. Perlman. Consideration of the various factors reveals serious flaws in UNUM's decisionmaking process which rendered it arbitrary and capricious. By failing to seek outside expert assistance, working under a potential conflict of interest, and ignoring the nature, demands and responsibilities of the insured's job, UNUM overlooked important issues. *See Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991).

■ The disposition of Ms. Perlman's claim is still at issue. Although UNUM's decision was arbitrary and capricious, there are genuine issues of fact concerning the existence, severity and duration of Ms. Perlman's disability. I cannot resolve these issues on a summary judgment motion. Accordingly, I am remanding the case to UNUM for a new disability benefits determination. *See Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 n. 4 (7th Cir.1994), *remanded to* 92 C 2156, 1995 WL 680154, at *1 (N.D.Ill. Nov.13, 1995) (explaining that district court is not required to remand case to administrator but may do so in order to make benefit eligibility determination). As part of this determination, UNUM shall seek outside expert assistance in reviewing Ms. Perlman's claim. To the extent possible, this outside expert assistance may involve an independent medical evaluation or the performance of certain tests on Ms. Perlman. UNUM also shall gather the necessary information about Ms. Perlman's job duties and the interactive effect between her mental and physical condition and her job performance.[6]

### Conclusion

UNUM's decision to deny Ms. Perlman's disability benefits was arbitrary and capricious because UNUM failed to gather and consider all appropriate evidence. The claim is remanded to UNUM for a new determination in accordance with this opinion.

---

6. I am not remanding this case, as UNUM suggests, because Ms. Perlman failed to exhaust her administrative remedies. UNUM argues that Ms. Perlman never filed a claim for long-term disability benefits, and therefore she denied UNUM a chance to review that claim. Ms. Perlman, in fact, did not file a claim for long-term disability benefits. Nevertheless, I will exercise my discretion on the exhaustion issue and find that any such claim would have been futile. *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir.1997). UNUM cannot contend seriously that Ms. Perlman would have been granted long-term disability benefits when it found her not disabled and therefore not eligible for short-term disability benefits.